Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| NOVACANN LABS. CORP.<br><br>RECURRIDA<br><br>v.<br><br>MARJORIE RIVERA TOLENTINO, EN SU CARÁCTER DE DIRECTORA EJECUTIVA DE LA OFICINA DE CANNABIS MEDICINAL Y JUNTA REGLAMENTADORA DEL CANNABIS MEDICINAL<br><br>RECURRIDOS<br><br>**CANNALYTICS, LLC**<br><br>**PETICIONARIO** | TA2026CE00620 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2026CV01175<br><br>Sobre: Recurso de Revisión para el acceso a la información pública (Ley Núm. 141-2019, según enmendada) |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

### I.

El 15 de mayo de 2026, Cannalytics, LLC, (parte peticionaria) presentó un recurso de *Certiorari*, en el que solicitó que revoquemos la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario), el 15 de mayo de 2026, notificada y archivada digitalmente en autos ese mismo día.[1] Mediante dicho dictamen, el foro primario declaró No Ha Lugar la solicitud de Intervención presentada por la parte peticionaria.

---

[1] Véase entrada núm. 24 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

El 19 de mayo de 2026, emitimos una *Resolución* en la cual le concedimos a las partes recurridas, Novacann Labs. Corp. (Novacann), Marjorie Rivera Tolentino, en su capacidad de Directora Ejecutiva de la Oficina de Cannabis Medicinal, y a la Junta Reglamentadora del Cannabis Medicinal (JRCM o Junta) hasta el 26 de mayo de 2026 para exponer sus posiciones acerca de los méritos del recurso.[2]

El 26 de mayo de 2026, JRCM, presentó su escrito de *Comparecencia en Cumplimiento de Orden exponiendo posición sobre los méritos del recurso,* en el que, expuso su posición institucional acerca de sus obligaciones en el caso de autos, así como su posición sobre la orden recurrida.[3]

Ese mismo día, Novacann, presentó su *Oposición a la Expedición del Auto de Certiorari,* en el que, nos solicitó que deneguemos la expedición del recurso.[4]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes para su atención.

**II.**

El caso de marras tuvo su génesis el 16 de febrero de 2026, cuando Novacann presentó un *Recurso Especial de Revisión Judicial para el Acceso a la Información Pública.*[5] En dicho recurso, Novacann solicitó acceso a informes, incluyendo "Informe de Análisis Comparativo" certificados, incluyendo "Certificados de Análisis (COAs)*",* planes, comunicaciones y minutas, entre otros documentos, la mayoría relacionados a la parte peticionaria y al laboratorio Green Hills. Específicamente solicitó:

    1. Informe de análisis comparativo de muestras tomadas por los laboratorios Cannalytics, Green Hills y

---

[2] Véase entrada núm. 3 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[3] Íd., entrada núm. 4.
[4] Íd., entrada núm. 5.
[5] Véase entrada núm. 1 en el SUMAC-TPI.

Novacann Labs durante el proceso de muestreo del 7 de noviembre de 2025 en las facilidades de NextGen Pharma LLC;

2. Certificados de Análisis emitidos por el Laboratorio Cannalytics del muestreo del 7 de noviembre de 2025;

3. Certificados de Análisis emitidos por el Laboratorio Green Hills del mismo proceso de muestreo;

4. Plan de Reapertura del Laboratorio Cannalytics aprobado por la Junta Reglamentadora;

5. Informe de Cumplimiento del Plan de Reapertura por parte de Cannalytics;

6. Expediente completo de documentos producidos desde el inicio del Plan de Reapertura hasta el reinicio de operaciones de Cannalytics;

7. Certificación de Cumplimiento vigente emitida por la agencia acreditadora A2LA a Cannalytics;

8. Comunicaciones entre A2LA y la Junta Reglamentadora, Oficina de Cannabis Medicinal, Inspectores y cualquier otro funcionario de la agencia;

9. Minuta de la reunión donde se aprobó el reinicio de operaciones de Cannalytics;

10. Minuta de la reunión donde se aprobó el levantamiento de la suspensión de licencia de Cannalytics

11. Constancia de pago de multas impuestas a Cannalytics y cualquier documento relacionado;

12. Certificar lo siguiente:
    a. Si se autorizó el reinicio de las operaciones del Laboratorio Cannalytics y proveer su base legal;
    b. Si se aprobó un Cambio de Dueño (CM-CD-01) respecto a Cannalytics. De ser el caso, proveer los documentos relacionados; y
    c. Si se aprobó un Cambio de Nombre (CM-CN-01) respecto a Cannalytics. De ser el caso, proveer los documentos relacionados.

Además, alegó que, a la fecha de presentación del recurso, la JRCM no había provisto la información solicitada mediante un requerimiento previo y enmendado con fecha del 18 de diciembre de 2025. Asimismo, sostuvo que la JRCM tampoco fundamentó una denegatoria del requerimiento de información ni asignó un número de solicitud a la petición.

El 13 de marzo de 2026, la JRCM presentó una *Contestación al Recurso Especial de Revisión Judicial para el Acceso a la Información Pública.* En esta, arguyó que el "Informe de Análisis Comparativo" solicitado por Novacann no existía y que, por tanto, procedía la desestimación del Recurso Especial de Revisión Judicial

(RERJ) en cuanto a ese documento. Respecto a los COAs solicitados, entre estos, los correspondientes a Cannalytics y Green Hills, sostuvo que constituían documentos propietarios protegidos como secretos comerciales, por lo cual, procedía la desestimación del RERJ en cuanto a esos documentos. En la alternativa, solicitó que el TPI notificara a Cannalytics y Green Hills como partes indispensables, debido a que tienen interés en los documentos solicitados.[6]

Tras varios trámites procesales, el 16 de abril de 2026, el TPI emitió una *Resolución* mediante la cual declaró Ha Lugar el *Recurso Especial de Revisión Judicial para el Acceso a la Información Pública* Enmendado presentado por Novacann. El foro primario ordenó la entrega de la información solicitada por Novacann, con excepción de la octava solicitud, titulada "Comunicaciones entre A2LA y la JRCM", por entender que esta resultaba vaga e imprecisa.[7]

El 7 de mayo de 2026, la JRCM presentó una *Moción en Cumplimiento de Orden*. En esta, adujo que entregó a Novacann un expediente de ciento setenta y siete (177) páginas que contenía la documentación identificada bajo su custodia. Indicó, además, que la documentación estuvo disponible desde el 22 de abril de 2026, sin embargo, Novacann no compareció a recogerla hasta el 27 de abril de 2026. Por otra parte, sostuvo que ciertas comunicaciones contenían material confidencial protegido como secreto de negocio, entre estas, los "*Standard Operating Procedures*" (SOPs) de Cannalytics y Green Hills. La JRCM entendió que tales solicitudes excedían su alcance razonable y, por ello, no divulgó esa información.[8]

---

[6] Íd., entrada núm. 11.
[7] Íd., entrada núm. 17.
[8] Íd., entrada núm. 20.

El 13 de mayo de 2026, Novacann presentó una *Réplica a "Moción en Cumplimiento de Orden" y Solicitud Reiterada de Sanciones por Desacato.* En dicha réplica, alegó que la JRCM incumplió con la Resolución del 16 de abril de 2026, ya que entregó un expediente incompleto y con información insuficiente. Alegó que no procede la defensa de secretos de negocio ni de información confidencial de terceros, ajenos al pleito.[9]

El 14 de mayo de 2026, la peticionaria compareció, por conducto de su representación legal, y presentó una *Urgente Solicitud de Intervención de la Parte Indispensable Cannalytics LLC.* Mediante esta, solicitó intervenir en el caso. Cannalytics argumentó que constituía una parte indispensable, ya que la información solicitada por Novacann contenía secretos de negocio. Sostuvo que dicha información incluía materiales técnicos internos, metodologías operacionales y procedimientos operacionales estandarizados, cuya divulgación le causaría un perjuicio irreparable.[10]

El 15 de mayo de 2026, el TPI emitió una *Orden,* en la cual, declaró No Ha Lugar la solicitud de intervención de la parte peticionaria.[11]

Inconforme, la parte peticionaria presentó el recurso de *certiorari* de epígrafe, en el que formuló el siguiente señalamiento de error:

**ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR A LA URGENTE SOLICITUD DE INTERVENCION PRESENTADA POR CANNALYTICS**

Cannalytics alegó que el TPI abusó de su discreción al denegar su solicitud de intervención en menos de veinticuatro (24) horas de

---

[9] Íd., entrada núm. 22.
[10] Íd., entrada núm. 23.
[11] Íd., entrada núm. 24.

su presentación, sin celebrar vista alguna. Argumentó que la información que Novacann procura obtener de la JRCM constituye secretos de negocio de su exclusiva titularidad, a saber: materiales técnicos internos, metodologías operacionales y SOPs. Sostuvo que, al ser la única parte con legitimación activa para invocar y ejercer el privilegio de secretos de negocio consagrado en la Regla 513 de las Reglas Evidencia, 32 LPRA Ap. VI, R. 513, y en la Ley Núm. 80-2011, 10 LPRA § 4131 *et seq.*, por lo cual, su presencia en el caso no es meramente conveniente, sino que la convierte en parte indispensable. Adujo, además, que el TPI ordenó la entrega de dicha información a Novacann sin que Cannalytics tuviera oportunidad alguna de comparecer y ser oída, lo que constituye una violación al debido proceso de ley. Cannalytics invocó los criterios (A) y (G) de la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR __ (2025), para sostener que la expedición del auto es necesaria para evitar que sus secretos de negocio queden expuestos de manera irreversible ante su competidor directo en el mercado de laboratorios de cannabis medicinal de Puerto Rico.

Por su parte, Novacann Labs, Corp. presentó su oposición. Arguyó que la Resolución del 16 de abril de 2026, mediante la cual el TPI adjudicó en los méritos el Recurso Especial de autos y ordenó la producción documental, advino final, firme e inapelable al no ser objeto de recurso oportuno de apelación por ninguna de las partes, por lo que el pleito se encuentra en su fase de ejecución y la única controversia pendiente es el cumplimiento de lo ya ordenado. Sostuvo que Cannalytics, en su carácter de tercero, que nunca fue parte en el pleito, no puede, a través de una intervención tardía, reabrir ni relitigar una adjudicación. En la alternativa, planteó que la controversia es académica, pues la JRCM ha sostenido que los SOPs, metodologías operacionales y materiales técnicos internos

nunca fueron identificados como categoría específica de documentos en controversia ni fueron objeto de adjudicación expresa en la Resolución Final, de modo que el interés que Cannalytics dice defender no está en juego.

Por otra parte, la JRCM presentó su posición sobre los méritos del recurso. Se limitó a exponer el alcance de sus obligaciones como Junta Reglamentadora y a señalar que desde el principio de la controversia y del caso le peticionó al TPI que notificara a la parte peticionaria, por ser parte indispensable en el caso. Planteó la posibilidad de que el caso se tornara académico, si el TPI resolvía que no tenía que entregar los documentos relacionados a la parte peticionaria.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Rivera et. al. v. Arcos Dorados et al.***, 212 DPR 194, 207 (2023); ***Caribbean Orthopedics v. Medshape et al.***, 207 DPR 994, 1004 (2021). Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***Rivera et al. v. Arcos Dorados et al.***, supra, pág. 209; ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 338 (2012).

De ordinario, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en abuso de su discreción. ***BPPR v. SLG Gómez-López***, 213 DPR 314,334 (2023). En el ámbito judicial, la discrecio2n del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento  judicial para así llegar a una conclusión justiciera.

***Torrez González v. Zaragoza Meléndez,*** 211 DPR 821, 847 (2023);

***Mun. Caguas v. JRO Construction***, 201 DPR 703, 712 (2019).

Esta discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. ***Torrez González v. Zaragoza Meléndez,*** supra, pág. 848. Así pues, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, ***In re Aprob. Enmdas. Reglamento TA***, supra, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de certiorari. [12]

La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". ***Citibank et al. v. ACBI et al.***, 200 DPR 724, 735 (2018); ***García López y otro v. E.L.A.***, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". ***BPPR v. SLG Gómez-López***, supra, pág. 335; ***800 Ponce de León. v. AIG***, 205 DPR 163, 174 (2020); ***Citibank et al. v. ACBI et al.***, *supra*. Ello no implica que los tribunales puedan actuar en una forma u otra, haciendo abstracción del resto del Derecho. ***BPPR***

---

[12] Esta Regla dispone lo siguiente:
> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*v. SLG Gómez-López*, supra; ***Rivera et al. v. Arcos Dorados et al.***, supra, pág. 210. Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". ***Citibank et al. v. ACBI et al.,*** *supra*, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". ***Citibank et al. v. ACBI et al.***, *supra*, pág. 736.

### B.

La Regla 21 de Procedimiento Civil, 32 LPRA Ap. V, R. 21 regula el mecanismo de intervención. La intervención como cuestión de derecho, procede cuando la persona solicitante reclama algún derecho o interés en la propiedad o asunto objeto del litigio que pueda, de hecho, quedar afectado por la disposición final del pleito. Regla. 21.1(b) de Procedimiento Civil, *supra.* El criterio para determinar si se reconoce o no a un peticionario el derecho de intervención es práctico y no conceptual. ***Doral Mortgage Corp. v. Alicea***, 147 DPR. 862, 867 (1999), citando a ***Ready Mix Concrete v. R. Arellano & Co.***, 110 DPR 869, 873 (1981). Es decir, está limitado por los criterios antes esbozados. El análisis depende de las particularidades de cada caso y requiere ponderar la economía procesal frente a la protección de los intereses sustanciales en controversia. ***Chase Manhattan Bank v. Nesglo, Inc.***, 111 DPR 767, 769–70 (1981).

La denegatoria de una solicitud de intervención es una orden final con respecto al solicitante. Por ello, es una determinación sujeta a revisión judicial por el foro apelativo. ***Doral Mortgage Corp. v. Alicea,*** *supra.*

Relacionado con lo anterior, una parte indispensable es: "aquella cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada en su ausencia del litigio". ***Pérez Rosa v. Morales Rosado***, 172 DPR 216, 222 (2007). No es cualquier interés sobre un pleito, sino que se trata de un interés de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos, *Íd.* Ese interés tiene que ser real e inmediato.

Nuestro más alto foro ha reiterado que: "[L]a falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso. Incluso, los foros apelativos [...] " ***López García v. López García***, 200 DPR 50, 65, (2018). Una sentencia dictada en ausencia de parte indispensable es nula. *Íd*

## C.

La **Regla 513 de las Reglas de Evidencia,** *supra*, R. 513. reconoce el privilegio de secretos de negocio y dispone que el titular de un secreto comercial tiene el privilegio de rehusar divulgarlo y de impedir que otra persona lo divulgue, siempre que ello no tienda a encubrir un fraude o causar una injusticia. El propósito del privilegio es proteger el sistema de libre empresa al disponer que los dueños de secretos comerciales puedan rehusar divulgar secretos importantes sobre su comercio o negocio. ***Ponce Advance Med. Grp. Network, Inc. v. Santiago González***, 197 DPR. 891, 901 (2017).

En nuestra jurisdicción, la legislación que regula los aspectos sustantivos de los secretos de negocio es la ***Ley para la Protección***

*de Secretos Comerciales e Industriales de Puerto Rico*", Ley Núm. 80-2011*,* 10 LPRA sec. 4131 *et seq.* Un secreto comercial es toda aquella información: (1) de la cual se deriva un valor actual, potencial o una ventaja económica; (2) que no es de conocimiento común o accesible por medios apropiados; y (3) que se ha mantenido confidencial a través de medidas razonables de seguridad. *Ponce Advance Med. Grp. Network, Inc. v. Santiago González, supra.* El Tribunal Supremo también ha señalado que el privilegio es personal a su titular. *Consejo de Titulares del Condominio Parques de Cupey v. Triple-S Propiedad,* 2025 TSPR 82, 216 DPR __ (2025).

Por su parte, la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública, Ley Núm. 141-2019*, 3 LPRA § 9913, consagra el derecho ciudadano de acceso a la información pública. No obstante, ese derecho no es absoluto: cede ante intereses protegidos cuando la información está clasificada como confidencial en alguna ley o reglamento. El privilegio de secretos de negocio, reconocido en la *Regla 513 de Evidencia, supra.* y en la *Ley Núm. 80-2011*, *supra,* constituye precisamente una de esas excepciones al deber de divulgación.

## IV.

En el presente caso, la parte peticionaria sostiene que el TPI erró al Declarar No Ha Lugar la urgente solicitud de intervención presentada por dicha parte.

Por el contrario, la parte recurrida Novacann sostiene que la resolución emitida por el foro primario es correcta. Alega que, el pleito se encuentra en su fase de ejecución y la única controversia pendiente es el cumplimiento de lo ya ordenado. Por lo cual no podemos intervenir con la determinación recurrida.

La JRCM sostiene que alertó al TPI de la necesidad de incluir y notificar los procedimientos a la parte peticionaria, por ser indispensable, pero nunca se le notificó.

Tras un análisis objetivo, sereno y cuidadoso del expediente y de la petición de *certiorari*, y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, determinamos ejercer nuestra facultad revisora con el propósito de conceder una solución justa en derecho, pues concluimos que el TPI cometió el error señalado.

Cannalytics ostenta un interés propietario real, concreto y justiciable sobre los documentos que Novacann pretende obtener mediante la JRCM, los SOPs, metodologías operacionales y materiales técnicos del laboratorio. Ciertamente, Cannalytics es parte indispensable en el pleito. Adviértase que, sus derechos e intereses se pueden ver irremediablemente afectados, sin su participación en el caso.

Por otra parte, la propia JRCM reconoció expresamente en su Moción en Cumplimiento de Orden que los documentos en controversia son confidenciales por constituir secretos de negocio y que advirtió al TPI sobre la necesidad de notificar e incluir a la parte peticionaria. Novacann admitió en su Réplica que Cannalytics es la única parte con legitimación activa para reclamar el privilegio de secretos de negocio sobre esa información. Cannalytics es, por tanto, la única parte que puede comparecer y ejercer ese privilegio. La Junta Reglamentadora, como ente regulador, no ocupa su lugar ni puede sustituirla en ese rol.

La Regla 40 (g) del Reglamento del Tribunal de Apelaciones, *supra*, R. 40(g), autoriza la expedición del auto de *certiorari* para evitar un fracaso de la justicia, lo que ocurre en este caso. Al no ser parte del litigio original, Cannalytics carece de todo mecanismo alternativo para proteger sus derechos. Una vez

divulgados los secretos de negocio de Cannalytics, no ostenta ningún remedio posterior para revertir ese daño.

En virtud de lo antes expuesto, resolvemos que, la parte peticionaria es parte indispensable y la *Orden* recurrida es contraria a derecho. Por consiguiente, debe ser revocada.

**V.**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se *revoca* la *Orden* recurrida a los fines de que se permita a intervención de la parte peticionaria en el pleito. Se devuelve el caso al foro recurrido, para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones